UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------×

JAMILLAH COOPER,

                    Plaintiff,

     -against-                       **COMPLAINT**

THE CITY OF NEW YORK AND POLICE OFFICER
JESSICA RIVERA (SHIELD 29757),

                    Defendants.
-------------------------------------------------------------------------×

       Plaintiff Jamillah Cooper, by and through her counsel, The Harman Firm, LLP, alleges for her Complaint against Defendants The City of New York (the "City") and Police Officer Jessica Rivera ("Officer Rivera") (collectively "Defendants") as follows:

### PRELIMINARY STATEMENT

       1.     Plaintiff was detained for more than 24 hours without probable cause.  Defendants charged Plaintiff with Aggravated Harassment in the Second Degree without evidence that Plaintiff had committed the required acts.  As such, Defendants did not have probable cause to arrest and hold Plaintiff.  During her detainment, Defendants also strip-searched Plaintiff without legal justification.

       2.     Defendants' false arrest and unjustified strip search of Plaintiff caused her severe emotional distress.

       3.     Plaintiff brings this action for compensatory damages and attorneys' fees pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988 for violations of her civil rights.

## JURISDICTION

4.      This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, and the Fourth

and Fourteenth Amendments of the United States Constitution, and New York State law.

5.      Jurisdiction is founded upon 28 U.S.C. §§ 1331, 1343, and 1367.

6.      This Court has supplemental jurisdiction over Plaintiff's New York State law

claims under 28 U.S.C. § 1367.

## NOTICE OF CLAIM

7.      Plaintiff filed a Notice of Claim with the Comptroller of the City of New York

within 90 days of the accrual of her claims for false arrest.

8.      More than 30 days have elapsed since the filing of the Notice of Claim, and

adjustment or payment thereof has been neglected or refused.

9.      Plaintiff has complied with all conditions precedent necessary to commence an

action pursuant to New York State Law.

10.      This action was commenced within one year and ninety days from the date the

pendent claims herein accrued.

## VENUE

11.      Venue is properly laid in the Southern District of New York under U.S.C. §

1391(b), in that this is the District in which Plaintiff's claim arose.

## TRIAL BY JURY

12.      Plaintiff respectfully requests a trial before a jury of all issues in this matter

pursuant to Fed. R. Civ. P. 38(b).

**PARTIES**

13.     Plaintiff Ms. Cooper at all times relevant hereto, was and is a resident of New York County, in the City and State of New York.

14.     Defendant the City was and is a municipal corporation duly organized and existing under and by virtue of the laws of the State of New York.

15.     The City maintains the New York City Police Department ("NYPD"), a duly authorized public authority and/or police department, authorized to perform all functions of a police department as per the applicable sections of the New York State Criminal Procedure Law, acting under the direction and supervision of the aforementioned municipal corporation, The City of New York.

16.     Upon information and belief, at all times relevant hereto, individual Defendant Officer Rivera was a duly sworn member of the NYPD and was acting under the supervision of the NYPD and according to her official duties.  Officer Rivera is sued herein in her official and individual capacities.  At all times hereinafter mentioned, Officer Rivera was assigned to the 52nd Precinct of the NYPD.

17.     Each and all of the acts of the Officer Rivera alleged herein were done by Officer Rivera while acting within the scope of her employment by the City.

**STATEMENT OF FACTS**

**I.      General Facts**

18.     On August 3, 2018, Ms. Cooper's son had pre-school graduation.

19.     Ms. Cooper's son's father, Eddy Tineo-Perez, was supposed to attend the graduation.

20.     Mr. Tineo-Perez, however, failed to show up.

21.     Before the graduation began, Ms. Cooper drove to Mr. Tineo-Perez's home, which is less than 10 minutes from the school, to find him.

22.     Upon arriving at Mr. Tineo-Perez's home, Ms. Cooper found out that Mr. Tineo-Perez was having a sexual relationship with a man.

23.     Ms. Cooper left immediately.

24.     Shortly after, Ms. Cooper texted Mr. Tineo-Perez that she knew about the relationship.

25.     These text messages were not threatening to Mr. Tineo-Perez, did not constitute constitutional criminal conduct, and could not be reasonably interpreted as a threat.

26.     On August 10, 2018, Officer Rivera called Ms. Cooper.

27.     After identifying herself as an officer of the NYPD by text message, Officer Rivera informed Ms. Cooper that, among other things, the NYPD had a warrant for her arrest.

28.     Upon information and belief, the NYPD did not have a warrant for Ms. Cooper's arrest.

29.     Rather, Officer Rivera had an Investigation Card ("i-card") for Ms. Cooper.

30.     Upon information and belief, an "i-card" is an investigation card that is issued by the NYPD for perpetrators, suspects and witnesses.

31.     On August 15, 2018, at approximately 8:00 a.m., Ms. Cooper, with her attorney, voluntarily surrendered herself at the NYPD's 52nd Precinct, located at 3016 Webster Avenue, Bronx, New York 10467.

32.     Officer Rivera, without any legal justification, arrested Ms. Cooper, charging her with Aggravated Harassment in the Second Degree.

33.     Aggravated Harassment in the Second Degree means:

> With the intent to harass, annoy, threaten or alarm another person, he or she strikes, shoves, kicks or otherwise subjects another person to physical contact thereby causing physical injury to such person or to a family or household member of such person….
>
> P.L. § 240.30 (4).

34.     At no point was there any evidence to support probable cause that Ms. Cooper had the intent to harass, annoy, threaten or alarm Mr. Tineo-Perez.

35.     At no point was there any evidence to support probable cause that Ms. Cooper had struck, shoved, kicked, or otherwise subjected Mr. Tineo-Perez to physical contact.

36.     At no point was there any evidence to support probable cause that Ms. Cooper caused Mr. Tineo-Perez physical injury.

37.     Ms. Cooper did not commit any crime or violation of the law.

38.     At no relevant time did Defendants possess information that would lead a reasonable officer to believe probable cause existed to warrant arresting Ms. Cooper.

39.     In fact, Officer Rivera told Ms. Cooper's attorney that she knew the complainant, Mr. Tineo-Perez, and did not believe Mr. Tineo-Perez to be credible but "had" to arrest Ms. Cooper anyway.

40.     As such, Officer Rivera arrested Ms. Cooper.

41.     Officer Rivera handcuffed Ms. Cooper's hands behind her back.

42.     Officer Rivera took Ms. Cooper to a bathroom that opened into a public and busy hallway in the precinct to strip search Ms. Cooper.

43.     Another officer held the bathroom door open.

44.     Officer Rivera lifted Ms. Cooper's shirt, exposing her undergarments, including her bra.

45.     Officer Rivera then lifted Ms. Cooper's bra, exposing her breasts.

46.     With the door open, Officer Rivera searched Ms. Cooper by touching her stomach, chest, breasts, and neck.

47.     Officer Rivera then lifted Ms. Cooper's bra, exposing her breasts.

48.     Ms. Cooper was positioned facing toward the door and watched people walking through the hallway as she was strip-searched in the bathroom.

49.     Upon information and belief, people in the hallway watched Ms. Cooper as Officer Rivera took her clothes off and touched her stomach, chest, breasts, and neck, to Ms. Cooper's humiliation.

50.     This touching lasted for approximately three minutes.

51.     Ms. Cooper was handcuffed for the entire search.

52.     At no point would any reasonable officer suspect that Ms. Cooper had weapons, contraband, or concealed evidence.

53.     After finishing her search, Officer Rivera escorted Ms. Cooper to a holding cell.

54.     After about five hours in the cell, Ms. Cooper was processed and returned to her cell.

55.     Ms. Cooper then spent another 10 hours in the cell.

56.     While in the cell, Ms. Cooper complained about eye pain from the constant light, hunger, and thirst.

57.     The only response she received from the NYPD's police officers was that there was nothing anyone could do.

58.     Around 11:00 p.m., Ms. Cooper was transferred to a vehicle to take her to the courthouse located at 215 E 161st St, The Bronx, New York 10451 (the "Courthouse").

59.     Ms. Cooper was chained to several male detainees.

60.     Ms. Cooper injured her foot in the process.

61.     After arriving at the Courthouse, she was again put into a cell, this time for about one hour.

62.     Then, Ms. Cooper had her shoes removed and was processed again.

63.     She was transferred between three cells for the next eight hours on her hurt foot.

64.     At approximately 11:00 a.m., Ms. Cooper finally appeared before a judge.

65.     At this time, all charges against Ms. Cooper were dropped for lack of evidence.

66.     At this point, Ms. Cooper was released.

67.     In total, Ms. Cooper was held in custody for over 24 hours.

68.     As a result of her arrest, search, and detainment, Ms. Cooper suffers from emotional distress.

## II.     Facts Concerning Municipal Liability

69.     All of the aforementioned acts of Defendants, their agents, servants and employees, were carried out under the color of state law.

70.     All of the aforementioned acts deprived Plaintiff of her rights, privileges and immunities guaranteed to citizens of the United States by the Fourth and Fourteenth Amendments to the Constitution of the United States of America, and were therefore in violation of 42 U.S.C. § 1983.

71.     The acts complained of were carried out by Officer Rivera in her capacities as a police officer with all of the actual and/or apparent authority attendant thereto.

72.     The acts complained of were carried out by the aforementioned individual Officer Rivera in her capacitates as a police officer, pursuant to the customs, usages, practices,

procedures, and rules of The City and the NYPD, all under the supervision of ranking officers of said department.

73.     Defendants, collectively and individually, while acting under color of state law, engaged in conduct which constituted custom, usage, practice, procedure or rule of respective municipality/authority, which is forbidden by the Constitution of the United States.

74.     Officer Rivera arrested, searched, and incarcerated Plaintiff, in the absence of any evidence of criminal wrongdoing, notwithstanding Officer Rivera's knowledge that said search, arrest and incarceration would jeopardize Plaintiff's liberty, well-being, safety, and violate her constitutional rights, and there was no basis for it.

75.     The acts complained of were carried out by the aforementioned Officer Rivera in her capacity as a police officer and official with all the actual and/or apparent authority attendant thereto.

76.     The acts complained of were carried out by the aforementioned individual Defendants in their capacities as police officers and officials pursuant to the customs, policies, usages, practices, procedures, and rules of the City and the NYPD, all under the supervision of ranking officers of said department.

77.     Those customs, policies, patterns, and practices include, but are not limited to:

    a.  requiring officers to make an arrest when a person of interest reports to a precinct pursuant to an i-card;

    b.  requiring officers to make a predetermined number of arrests within a predetermined time frame;

    c.  requiring precincts to record a predetermined number of arrests within a predetermined time frame;

    d.  failing to take any measures to correct unconstitutional behavior when brought to the attention of supervisors and/or policy makers; and

     e.   failing to properly train police officers in the requirements of the United States Constitution.

78.     The aforesaid customs, policies, usages, practices, procedures and rules of Defendant the City and the NYPD directly cause, *inter alia*, the following unconstitutional practices:

     a.   arresting individuals regardless of probable cause in order to inflate the officer's arrest statistics;

     b.   arresting individuals regardless of probable cause in order to positively affect precinct-wide statistics;

     c.   falsifying evidence and testimony to support those arrests; and

     d.   falsifying evidence and testimony to cover up police misconduct.

79.     In an Order dated November 30, 2009, in *Colon v. City of New York,* 09- CV-0008 (E.D.N.Y.) (Docket No. 34), the Hon. Jack B. Weinstein stated:

> Informal inquiry by the court and among the judges of this court, as well as knowledge of cases in other federal and state courts, has revealed anecdotal evidence of repeated, widespread falsification by arresting police officers of the New York City Police Department. Despite numerous inquiries by commissions and strong reported efforts by the present administration -- through selection of candidates for the police force stressing academic and other qualifications, serious training to avoid constitutional violations, and strong disciplinary action within the department -- there is some evidence of an attitude among officers that is sufficiently widespread to constitute a custom or policy by the city approving illegal conduct of the kind now charged.

80.     Upon information, this policy was still in existence as of August 15, 2018.

81.     Upon information and belief, on or about October 17, 2011, in a Police Officer Performance Objectives Operation Order (the "Operation Order"), NYPD Commissioner Kelly directed all commands that, "Department managers can and must set performance goals" relating to the "issuance of summons, the stopping and questioning of suspicious individuals, and the arrests of criminals."

82.     Upon information and belief, that same Operation Order stated, "uniformed members... who do not demonstrate activities... or who fail to engage in proactive activities... will be evaluated accordingly and their assignments re-assessed."

83.     This data-driven policing plan (the "Plan") has resulted in lawsuits filed by members of the NYPD in the United States District Court for the Southern District of New York, alleging that the NYPD requires officers to meet fixed numerical goals for arrests and court summonses each month.

84.     In 2012, Police Officer Craig Matthews commenced *Matthews v. City of New York*, 12 CV 1354 (BSJ) in the Southern District of New York, alleging that his complaints that the existing quota system was leading to unjustified stops and arrests, and thereby causing damage to the department's relationship with the local community led to his termination.  There was little dispute that he made these complaints or that they were well founded.  *See Matthews v. City of New York*, 779 F.3d 167, 169 (2d Cir. 2015).

85.     That the Plan, or something substantially similar, is still in effect is also reflected in a class action suit filed on December 10, 2015, *Edreweeene Raymond v. The City of New York*, 15-CV-6885 (SDNY), by various police officers alleging that the NYPD still requires officers to meet fixed numerical goals for arrests and court summonses each month.  Officer Edreweene Raymond has alleged in this lawsuit and in the media that the NYPD engaged in unconstitutional, racist, discriminatory, and unlawful practices in attempting to achieve the goal of meeting quotas, as opposed to combating crime.  According to a New Yorker article published August 27, 2018, which can be found online at https://www.newyorker.com/podcast/political-scene/an-nypd-sergeant-blows-the-whistle-on-quotas, despite a 2010 statewide ban, officers are forced to meet monthly quotas for arrests and summonses.

86.     Therefore, it is apparent that, through the litigation brought in the U.S. Courts for New York, as well as the many cases filed in New York's State courts, thousands of civilians have alleged that members of the NYPD has deliberately arrested them without probable cause.

87.     According to an article by CBS New York, which can be found online at https://newyork.cbslocal.com/2016/02/23/nypd-crime-statistics-available-public/, Police Commissioner William Bratton responded to these serious allegations of pushing quotas for arrests dismissively.  Thus, even if the Defendant The City of New York was not the architect of the policies and routinized conduct causing these unlawful arrests, it was certainly on notice of the practice, and by failing to take any meaningful corrective steps, has ratified, endorsed, or otherwise communicated its acceptance of this policy to the officers it employs.

88.     The Plan as kept in effect through the date of Plaintiff's arrest, even with Defendant The City's knowledge that county prosecutors were often not charging the individuals arrested, or otherwise not actively pursuing their prosecutions, or that there was insufficient evidence to justify the arrests and illegal searches, or that the arresting officers were seeking to bolster the arrests with false allegations, and that the prosecutors often had found insufficient cause to justify the imposition of charges or continued prosecution if charges were filed.  This is precisely the conduct that has given rise to the constitutional violations against Plaintiff alleged herein.  She was arrested without any probable cause and the judge dismissed the charge against her.

89.     In a February 4, 2016 New York Times article, which can be found online at http://nyti.ms/1nPv0mO, the City proudly announced that the NYPD had "created a new 40-member legal unit that develops evidence that the Law Department can use to defend lawsuits

against the police, and the [Law Department] hired about 30 lawyers to bolster its litigation teams and to try more cases in court."

90.    Accordingly, rather than take meaningful steps to reduce and eliminate such misconduct by its officers, the City and the NYPD have instead affirmatively announced a renewed commitment to defending such misconduct.

91.    Stated differently, The City's response to the litigation caused by misconduct on the part of the NYPD is, perplexingly, directed not at the deliberate, frequent, brazen constitutional violations giving rise to the litigation, but rather at defending such misconduct, thereby enabling officers to continue engaging in unconstitutional conduct without fear of being sued or held accountable.  In so doing, The City has dispensed altogether with any pretense that such misconduct is not sanctioned, ratified, or otherwise endorsed by The City and the NYPD's executive leaders and supervisory personnel.

92.    Based on the foregoing, The City has not only tolerated, but actively fostered a lawless atmosphere within the NYPD and that The City, at the bare minimum, has been on notice of, and remained deliberately indifferent to, the risk that the undue emphasis on arrest quotas, or minimum activity levels, particularly when coupled with a decidedly and deliberately indifferent level of supervision, would lead to the violation of individuals' constitutional rights in general, and the violation of Plaintiff's rights in particular.

93.    The foregoing customs, policies, usages, practices, procedures and rules of the City and the NYPD constitute a deliberate indifference to the safety, well-being and constitutional rights of Plaintiff.

94.     The foregoing customs, policies, usages, practices, procedures and rules of the City and the NYPD were the direct and proximate cause of the constitutional violations suffered by Plaintiff as alleged herein.

95.     The foregoing customs, policies, usages, practices, procedures and rules of the City and the NYPD were the moving force behind the constitutional violations suffered by Plaintiff as alleged herein.

96.     As a result of the foregoing customs, policies, usages, practices, procedures and rules of The City and the NYPD, Plaintiff was placed under arrest unlawfully.

97.     Defendants, collectively and individually, while acting under color of state law, were directly and actively involved in violating the constitutional rights of Plaintiff.

98.     Defendants, collectively and individually, while acting under color of state law, acquiesced in a pattern of unconstitutional conduct by subordinate police officers, and were directly responsible for the violation of Plaintiff's constitutional rights.

99.     All of the foregoing acts by Defendants deprived Plaintiff of federally protected constitutional rights, particularly her Fourth and Fourteenth Amendment rights to be free from unreasonable search and seizure.

**CLAIMS FOR RELEIF**
**FIRST CLAIM FOR RELIEF**
**(False Arrest**
**Under 42 U.S.C. § 1983)**

100.    Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 99 with the same force as though separately alleged herein.

101.    As a result of the Defendants' conduct, Plaintiff was subjected to illegal, improper and false arrest, taken into custody, and caused to be falsely imprisoned, detained, and confined without any probable cause, privilege, or consent.

102.    As a result of the foregoing, Plaintiff's liberty was restricted, she was put in fear

for her safety, and she was falsely arrested without probable cause.

**SECOND CLAIM FOR RELIEF**
**(False Arrest**
**Pursuant to State Law)**

103.    Plaintiff hereby realleges and incorporates each and every allegation contained in

paragraphs 1 through 102 with the same force as though separately alleged herein.

104.    At all times hereinafter mentioned, Defendant The City of New York assumed

responsibility supervision, and authority over NYPD, its agents, servants and employees, and is

liable to Plaintiff for the acts complained of herein under the theories of vicarious liability and

*respondeat superior*.

105.    Plaintiff was detained and held under the imprisonment and control of the

Defendants under false pretenses.

106.    Due to the conduct of Defendants, their servants, agents, employees, licensees,

independent contractors and/or police officers while in the course and scope of their employment

with Defendant The City of New York, and acting under authority of the NYPD, falsely arrested

and imprisoned the Plaintiff, without warrant, authority of law, or probable cause.

107.    That the acts and conduct on the part of the individual Defendant Officer Rivera

constituting unlawful and unconstitutional conduct are: unlawfully and intentionally detaining

and confining Plaintiff against her will and without her consent; unlawfully and intentionally

detaining and confining Plaintiff without privilege, probable cause or valid legal process;

fabricating evidence against Plaintiff; unlawfully detaining and confining Plaintiff through the

unlawful arrest of Plaintiff; unlawfully detaining and confining Plaintiff through the use of force;

unlawfully arresting Plaintiff and placing Plaintiff in handcuffs without reasonable cause, and committing such other acts resulting in the unlawful arrest and imprisonment of Plaintiff.

108.    That at all times hereinafter mentioned, said arrest, confinement and restraint of liberty was not otherwise privileged.

109.    Plaintiff was conscious of the confinement.

110.    That as a direct, sole and proximate result of the false arrest, imprisonment, and excessive force, Plaintiff was caused to and did sustain humiliation and embarrassment, emotional and mental distress, moral and mental degradation, indignity and disgrace, injury to personal and business reputation, inconvenience, disturbance and disruption of life, legal expenses, and loss of personal income.

111.    By the actions described above, Defendants caused Plaintiff to be falsely arrested and/or falsely imprisoned without probable cause, without reasonable suspicion, illegally, without any proper claims, and without any right or authority to do so; and caused Plaintiff to suffer physical injuries.  The acts and conduct of Defendants were the direct and proximate cause of injury and damage to the Plaintiff and violated her statutory and common law rights as guaranteed by the laws of the Constitution of the State of New York.

112.    As a result of the foregoing, Plaintiff was deprived of her liberty, suffered a loss of quality and/or enjoyment of life, economic injury, physical injury, psychological injury and emotional distress, great humiliation, costs and expenses, and was otherwise damaged and injured.

## THIRD CLAIM FOR RELIEF
### (Illegal Search
### Pursuant to State Law)

113.    Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 112 with the same force as though separately alleged herein.

114.    At all times hereinafter mentioned, Defendant The City of New York assumed responsibility supervision, and authority over NYPD, its agents, servants and employees, and is liable to Plaintiff for the acts complained of herein under the theories of vicarious liability and *respondeat superior*.

115.    Plaintiff strip-searched without justification by Defendants.

116.    Due to the conduct of Defendants, their servants, agents, employees, licensees, independent contractors and/or police officers while in the course and scope of their employment with Defendant The City of New York, and acting under authority of the NYPD, illegally searched Plaintiff.

117.    That as a direct, sole and proximate result of the illegal search, Plaintiff was caused to and did sustain humiliation and embarrassment, emotional and mental distress, moral and mental degradation, indignity and disgrace, injury to personal and business reputation, inconvenience, disturbance and disruption of life, legal expenses, and loss of personal income.

118.    As a result of the foregoing, Plaintiff was deprived of her liberty, suffered a loss of quality and/or enjoyment of life, economic injury, physical injury, psychological injury and emotional distress, great humiliation, costs and expenses, and was otherwise damaged and injured.

**FOURTH CLAIM FOR RELIEF**
**(Excessive Force**
**Pursuant to State Law)**

119.    Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 118 with the same force as though separately alleged herein.

120.    At all times hereinafter mentioned, Defendant The City of New York assumed responsibility supervision, and authority over NYPD, its agents, servants and employees, and is liable to Plaintiff for the acts complained of herein under the theories of vicarious liability and *respondeat superior*.

121.    Defendants used excessive force on Plaintiff by (1) strip-searching her without justification and, (2) detaining her, as, because her detainment was illegal, all force used during detainment was excessive.

122.    Due to the conduct of Defendants, their servants, agents, employees, licensees, independent contractors and/or police officers while in the course and scope of their employment with Defendant The City, and acting under authority of the NYPD, used excessive force on Plaintiff.

123.    By the actions described above, Defendants used excessive force on Plaintiff. The acts and conduct of Defendants were the direct and proximate cause of injury and damage to the Plaintiff and violated her statutory and common law rights as guaranteed by the laws of the Constitution of the State of New York.

124.    As a result of the foregoing, Plaintiff was deprived of her liberty, suffered a loss of quality and/or enjoyment of life, economic injury, physical injury, psychological injury and emotional distress, great humiliation, costs and expenses, and was otherwise damaged and injured.

**WHEREFORE**, Plaintiff respectfully requests the following relief:

A. For the first cause of action, compensatory damages in an amount to be determined at trial, interest, reasonable attorneys' fees, costs, and disbursements;

B. For the second cause of action, compensatory damages in an amount to be determined at trial, interest, reasonable attorneys' fees, costs, and disbursements;

C. For the third cause of action, compensatory damages in an amount to be determined at trial, interest, reasonable attorneys' fees, costs, and disbursements;

D. For the fourth cause of action, compensatory damages in an amount to be determined at trial, interest, reasonable attorneys' fees, costs, and disbursements; and

E. For such other and further relief as the Court deems just and proper.

Dated: New York, New York
       March 26, 2019

By:   /s Walker G. Harman, Jr.
      Walker G. Harman, Jr. [WH-8044]
      Edgar M. Rivera [ER-1378]
      THE HARMAN FIRM, LLP
      381 Park Avenue South, Suite 1220
      New York, NY 10016
      T: (212) 425-2600
      E: wharman@theharmanfirm.com
      E: erivera@theharmanfirm.com

      *Attorneys for Plaintiff*

18